Elizabeth DOLE, Secretary of Labor, United States Department of Labor, Plaintiff–Appellee,

v.

ELLIOTT TRAVEL & TOURS, INC.; and Jared Schubiner, Defendants–Appellants.

No. 89–1998.

United States Court of Appeals, Sixth Circuit.

Submitted Aug. 6, 1991.

Decided Aug. 22, 1991.

Claire Brady White (briefed), U.S. Dept. of Labor, Office of the Sol., Washington, D.C., John H. Secaras, Jerry G. Thorn, Joan E. Gestrin, Office of the Sol., Chicago, Ill., for plaintiff-appellee.

Robert Van Cleef (briefed), Becker & Van Cleef, Southfield, Mich., for defendants-appellants.

Before KENNEDY and MILBURN, Circuit Judges, and WILHOIT, District Judge *.

MILBURN, Circuit Judge.

Defendants Elliott Travel & Tours, Inc. and Jared Schubiner appeal the district court's grant of summary judgment for the Secretary of Labor in this action brought for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* The principal issues on appeal are (1) whether

* Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation.

there is a genuine issue of material fact as to Schubiner's status as an "employer" under the FLSA, 29 U.S.C. § 203(d); (2) whether there is a genuine issue of material fact as to the defendants' willfulness in violating the FLSA; (3) whether the district court erred by awarding liquidated damages on summary judgment; and (4) whether there is a genuine issue of material fact as to the accuracy of the calculations regarding back wages. For the reasons that follow, we affirm.

I.

Elliott Travel & Tours, Inc. ("Elliott Travel") provides travel agency services at numerous branch offices located throughout the Detroit Metropolitan area. Jared Schubiner owns, jointly with his wife, 100 percent of the stock of Elliott Travel, and he is the president of the corporation. In April 1987 the Wage and Hour Division of the U.S. Department of Labor initiated an investigation of employment practices at Elliott Travel for the period from April 1985 to April 1987. A review of payroll records revealed that employees at Elliott Travel did not receive overtime pay for hours worked in one work week in excess of forty unless biweekly hours worked exceeded eighty hours. The records also disclosed that when an overtime premium was paid, commission payments were excluded in determining the regular rate on which overtime rates were based. Moreover, at certain branch offices overtime hours were "banked"; i.e., not reported as hours worked during the week, but reserved for time off in the future.

On February 10, 1988, the Secretary of Labor filed the present action against Elliott Travel and Schubiner pursuant to section 17 of the FLSA to enjoin and restrain the defendants from violating sections 7, 11 and 15 of the FLSA. The Secretary alleged that defendants failed to pay appropriate overtime wages and failed to keep accurate records of hours worked. The Secretary alleged that defendants' violations were willful and requested interest, costs, and recovery of liquidated damages pursuant to section 16(c) of the FLSA.

Defendants denied the alleged violations in their answer filed by Schubiner, pro se. Schubiner filed a motion for dismissal of the claim against him on the ground that he could not be held individually liable for the corporation's alleged violations of the FLSA. Following a hearing, the district court denied Schubiner's motion for dismissal, and the Secretary subsequently filed a motion for sanctions against Schubiner pursuant to Federal Rule of Civil Procedure 11 for his filing of the motion to dismiss. Schubiner agreed to pay the Secretary $250 pursuant to a stipulation and order entered by the court without contest.

On April 10, 1989, the Secretary filed a motion for summary judgment supported by the pleadings, defendants' answers to interrogatories, admissions, and the affidavits of the Wage and Hour Division's area director and the compliance officer who investigated the case. Defendants opposed the motion for summary judgment on grounds that there existed genuine issues of material fact as to the Secretary's wage computations and that the affidavits filed by the Secretary in support of the motion for summary judgment were improper and should not be considered by the court. Defendants also asserted that it was improper to award liquidated damages on summary judgment. Defendants filed an affidavit of Schubiner and two unsworn statements by Elliott Travel employees to support their response to the motion for summary judgment.

Following a hearing on June 8, 1989, the district court issued a bench ruling granting the Secretary's motion for summary judgment. Thereafter, a formal judgment was entered permanently enjoining and restraining defendants from violating the FLSA by failing to pay overtime compensation and by failing to keep employment records. The district court ordered defendants to pay $18,015.22 for unpaid overtime compensation due employees, and the court also ordered defendants to pay $17,556.78 as liquidated damages. This timely appeal followed.

## II.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. This court reviews the district court's grant of summary judgment de novo, *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988), viewing all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, in responding to a summary judgment motion, the nonmoving party cannot rest on its pleadings but must present some "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original).

### A. Status as employer

Defendants argue that Schubiner did not have sufficient control over the corporation to be held individually liable as an "employer" under 29 U.S.C. § 203(d). Defendants rely on Schubiner's affidavit and their answers to the Secretary's request for admissions as evidence creating a genuine issue of fact regarding Schubiner's status as an employer.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d). The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA. *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973). "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir.1989) (per curiam). In deciding whether a party is an employer, "economic reality" controls rather than common law concepts of agency. *Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961). Whether a party is an employer within the meaning of the FLSA is a legal determination. *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir.1986); *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir.1986); *see Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir.1984) ("[T]he determination of whether a particular factual setting gives rise to coverage under the FLSA is a matter of law."). *But see Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir.) (whether party is employer is question of fact), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983).

"The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983). In *Agnew*, the court determined that "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment" were employers under the FLSA. *Id.* at 1514. "No one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case." *Sabine*, 695 F.2d at 195.

The record in this case reveals that Schubiner was involved in the business operations of the corporation, and he controlled the purse strings of the corporation. *See Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir.1984), *cert. denied,* 471 U.S. 1124, 105 S. Ct. 2654, 86 L.Ed.2d 272 (1985). Schubiner is president of Elliott Travel, and he and his wife are co-owners of the corporation. In response to the Secretary's first set of interrogatories, defendants stated that day-to-day control of the corporation was in the hands of Schubiner. However, in an amended response to the interrogatories, defendants stated that although major corporate decisions were made by Schubiner, the day-to-day control of specific operations was not entirely in his hands. In the amended response, defendants stated that Schubiner determined the amount of employee salaries, but the actual details of computing hours were handled by a payroll bookkeeper. Defendants also stated that a general manager handled many of the day-to-day problems relating to operation of the corporation, and managers of branch offices exercised control over hours worked by employees at the branch offices.

In an affidavit filed in support of defendants' response to the motion for summary judgment, Schubiner states that although he made major corporate decisions with respect to Elliott Travel, he did not have day-to-day control of specific operations, and the general operation of the company was not entirely in his hands. Schubiner reiterates in the affidavit that he did not personally handle payroll, and although he generally made arrangements for the amount of salary to be paid an employee, the actual details of calculating the hours, overtime, and commission were handled by the payroll bookkeeper. Schubiner also states in the affidavit that because of excessive time involved in the defense of numerous lawsuits against Elliott Travel and a prior business operated by Schubiner, he was not available to insure that employees of Elliott Travel were being paid in accordance with the FLSA. However, Schubiner adds that he anticipates the "problem relative to excessive litigation will soon be alleviated allowing [him] to devote more time to [Elliott Travel] to rigorously insure that the operations of [the corporation] comply with the Fair Labor Standards Act."

The economic realities of this case indicate that Schubiner was an employer within the meaning of the FLSA, and he is chargeable with personal liability for failure to comply with the FLSA. Schubiner was the chief corporate officer, had a significant ownership interest in the corporation, and had control over significant aspects of the corporation's day-to-day functions, including determining employee salaries. *See Agnew,* 712 F.2d at 1514. The fact that a payroll bookkeeper computed hours, overtime, and commissions and a general manager handled many of the day-to-day problems associated with operation of the corporation does not preclude finding that Schubiner was an employer. To be classified as an employer, it is not required that a party have exclusive control of a corporation's day-to-day functions. The party need only have "operational control of *significant aspects* of the corporation's day to day functions." *Id.* (emphasis added). In short, the evidence clearly demonstrates that Schubiner was the "top man" at Elliott Travel, and the corporation functioned for his profit. *Grim Hotel,* 747 F.2d at 972. There being no genuine dispute of the material facts regarding Schubiner's status as an employer, summary judgment was appropriate on this question of law.

B. Willfulness

An ordinary violation of the FLSA is subject to a two-year statute of limitations. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135, 108 S.Ct. 1677, 1680, 100 L.Ed.2d 115 (1988). However, where a violation is "willful" a three-year statute of limitations applies. *Id.* In *Richland Shoe,* the Supreme Court held that "[t]o obtain the benefit of the 3–year exception, the Secretary must prove that the employer's conduct was willful as that term is defined in [*Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125–30, 105 S.Ct. 613, 623–26, 83 L.Ed.2d 523 (1985) ]." The stan-

dard of willfulness adopted in Thurston requires the Secretary to show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute...." Id. at 133, 108 S.Ct. at 1681.

As evidence of willfulness on the part of the defendants, the Secretary asserts that it is undisputed that Schubiner had actual knowledge of the overtime provisions of the FLSA prior to the violations at issue in this case. In support of her motion for summary judgment, the Secretary submitted the affidavit of James Smith, area director of the Wage and Hour Division of the Department of Labor. The affidavit states that a travel agency known as "Elliott Travel Service," the predecessor to Elliott Travel & Tours, Inc., was investigated by the Department of Labor in 1975, and the investigation disclosed overtime violations of the FLSA. The affidavit states that the prior violation was resolved upon payment of overtime wages and an assurance of future compliance with the FLSA. The affidavit further states that following another complaint regarding unpaid overtime wages, Smith personally conferred with Schubiner on May 30, 1975, and Schubiner refused to pay the overtime wages which were due. The Secretary also submitted the affidavit of Shelley Scarfone, the compliance officer who investigated the present case. In the affidavit, Scarfone states that after this action was instituted defendants continued to exclude commission payments in calculating the overtime compensation for employees.

The only evidence offered by defendants on the willfulness issue is the affidavit of Schubiner in which he asserts that "at all times the Defendant has agreed to comply with the Act and still remains anxious to do so, and at all times ... has acted in good faith in an effort to comply with the Act." Schubiner states in the affidavit that if the FLSA was violated, "it was an error or an oversight by the bookkeeper, as there was no attempt or interference from Affiant to pay people less than the wages prescribed by law." Schubiner also states that at no time prior to institution of this action did the compliance officer inform defendants that commissions were to be added into gross pay for purposes of computing overtime compensation. Significantly, Schubiner's affidavit does not dispute the statement in Smith's affidavit regarding prior violations of the FLSA by Schubiner's previous travel agency, Elliott Travel Service.

From our review of the record in this case, we hold that there is no genuine issue of material fact as to whether defendants' violation of the FLSA was willful. As discussed earlier, Schubiner was the "top man" at Elliott Travel, and the corporation functioned for his profit. It is undisputed that Schubiner had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA. See Brock v. Superior Care, Inc., 840 F.2d 1054, 1062 (2d Cir.1988) (as modified on motion to clarify). Under these undisputed circumstances, defendants' violation of the FLSA satisfies the "willfulness" standard of Richland Shoe. Id.

C. Liquidated damages

■ Closely related to the question of willfulness on the part of the defendants is the issue of liquidated damages. Section 16(b) of the FLSA provides that an employer who violates the overtime compensation provisions of the FLSA "shall be liable" for liquidated damages in an amount equal to unpaid back wages. 29 U.S.C. § 216(b). The court may, in its discretion, refuse to award liquidated damages "if, and only if, the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act." Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir.1982) (emphasis in original); see 29 U.S.C. § 260.

Defendants contend that their good faith intention not to violate the FLSA and the reasonableness of their method of compensation are questions of fact which cannot be resolved by summary judgment. The Secretary argues that the district court properly awarded liquidated damages because defendants presented no evidence to create a genuine issue of material fact as

to their good faith and the reasonableness of their belief that they were acting in compliance with the FLSA. *See McClanahan v. Mathews*, 440 F.2d 320, 324 (6th Cir.1971).

To be relieved of liability for liquidated damages, the employer "has the 'substantial burden' of proving to the satisfaction of the trial court that its acts giving rise to the suit are *both* in good faith *and* reasonable." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir.1990) (emphasis in original). The only proof of good faith and reasonableness offered by defendants is the bare assertion in Schubiner's affidavit that at all times they have "acted in good faith in an effort to comply with the Act." Summary judgment is appropriate where the nonmoving party fails to make a showing sufficient to create a genuine issue of material fact regarding a matter on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because defendants have the burden of proving good faith and reasonableness, and they failed to offer any evidence of either, we hold that the district court did not err by awarding liquidated damages on summary judgment.

D. Back wages

█ Finally, defendants argue that the district court erred by granting summary judgment because there is a genuine issue of material fact regarding the accuracy of payroll records relied on by the Secretary in calculating back wages owed by defendants. In the affidavit filed in support of the Secretary's motion for summary judgment, the compliance officer who investigated this case states that she reviewed the payroll records produced by the defendants for the period of April 1985 to December 1987 and calculated the back wages due based on the records. Defendants contend that the affidavit of Schubiner along with statements of two Elliott Travel employees submitted in support of defendants' response to the motion for summary judgment place in question the accuracy of payroll records relied on by the Secretary. Defendants assert that they should be giv-

en an opportunity to show at trial that the weekly hours worked by employees claiming wrongful overtime payments were not properly represented to the Secretary. *See Duchon v. Cajon Co.*, 791 F.2d 43 (6th Cir.1986).

Schubiner states in his affidavit that he "has learned through conversations with a number of Defendant's employees that many of the employees of Defendant have been regularly and consistently cheating on their time cards...." Schubiner further states that because of the "persuasive cheating and falsification," employees should be subjected to examination and cross-examination during a trial to determine whether the payroll records accurately reflect the hours worked by the employees. The *unsworn* statements of the two employees are virtually identical and state that for the period of September 12, 1988, to November 23, 1988, these employees submitted inaccurate time cards.

We hold that there is no genuine issue of material fact regarding the accuracy of the records relied on by the Secretary. Summary judgment for the Secretary was appropriate because defendants failed to present admissible evidence to defeat the Secretary's properly supported motion for summary judgment. "Under Fed.R.Civ.P. 56(e), affidavits submitted in opposition to a summary judgment motion 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' " *Monks v. General Elec. Co.*, 919 F.2d 1189, 1192 (6th Cir.1990). "Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded." *State Mutual Life Assurance Co. v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir.1979). Because Schubiner's affidavit consists only of hearsay statements regarding falsification of time cards by employees, it must be disregarded. Similarly, the *unsworn* statements of the two employees offered by defendants must be disregarded because a court may not consider unsworn statements when ruling on a motion for sum-

mary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1608 n. 17, 26 L.Ed.2d 142 (1970); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980). Furthermore, the unsworn statements are irrelevant because they relate to conduct occurring during the period of September 1988 to November 1988, while the back pay period at issue in this case involves the period from April 1985 to December 1987.

### III.

For the reasons stated, the district court's grant of summary judgment is AFFIRMED in all respects.